IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SHARON WASHINGTON, for T.W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-134 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Sharon Washington ("Plaintiff"), proceeding on behalf of her now thirteen year-old son, T.W. ("Claimant") appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.  BACKGROUND**

Plaintiff protectively applied for SSI on behalf of Claimant on October 27, 2010, alleging a disability onset date of March 1, 2009, when her son was six years old. Tr. ("R."), p. 164. The Social Security Administration denied Plaintiff's application initially, R. at 78-

81, and on reconsideration, R. at 82-85. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 86, and the ALJ held a hearing on July 25, 2012. R. at 39-69. At the hearing, the ALJ heard testimony from Plaintiff and Claimant, who were represented by counsel. Id. On September 26, 2012, the ALJ issued an unfavorable decision. R. at 18-32.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 27, 2010, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: morbid obesity, asthma, borderline intellectual functioning, sleep apnea hypopnea syndrome, status-post tonsillectomy and adenoidectomy, hypoxemia, and costochondritis (20 C.F.R. § 416.924(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)). The claimant has not been disabled, as defined by the Social Security Act, since October 27, 2010, the date the application was filed (20 C.F.R. § 416.924(a)).

R. at 23-32.

When the Appeals Council denied Plaintiff's request for review on April 15, 2014, R. at 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand.

Plaintiff argues the Commissioner's decision is not supported by substantial evidence

because (1) the ALJ erred in determining that Claimant's oppositional defiant disorder (ODD), allergic rhinitis, and gastroesophageal reflux disease were not severe impairments; (2) the ALJ erred in evaluating Plaintiff's subjective symptoms; (3) the ALJ erred in finding that Claimant did not meet Listing 112.11 for Attention Deficit Hyperactivity Disorder ("ADHD"); (4) the ALJ erred in weighing the medical evidence of record; and (5) the ALJ erred in determining that Claimant's impairments did not functionally equal the severity of the Listings.[1] (See doc. no. 13 ("Pl's Br."), pp. 4-14.) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 15 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference,

---

[1] Plaintiff's attorney cites only one case in her entire brief, from the Northern District of Iowa, in contradiction of the Court's January 16, 2015 Order requiring citations to legal authority primarily from the Eleventh Circuit. (See doc. no. 10, p. 2.) Plaintiff's attorney was previously warned of this same deficiency, and has failed to meet this basic requirement yet again. See Whitaker ex rel. L.B. v. Colvin, No. CV 114-029, 2015 WL 3558560, at *3 n.

3

the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to

---

1 (S.D. Ga. June 4, 2015).

4

determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The Three-Step Sequential Process to Evaluate Disability in Children.

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will not be found disabled. Id. § 416.924(d)(2).

### B. The ALJ Properly Found Claimant's ODD, Allergic Rhinitis, and Gastroesophageal Reflux to Be Not Severe.

At the second step of the sequential evaluation process, if the claimant does not have "a medically determinable impairment, or [the] impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the ALJ will find that the claimant does not have a severe impairment and therefore not disabled. 20 C.F.R. § 416.924(c). The severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987)

(describing severity test as an "administrative convenience designed to screen out groundless claims").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady, 724 F.2d 914). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986).

The ALJ acknowledged Claimant had been diagnosed with ODD, childhood-onset type, allergic rhinitis, and gastroesophageal reflux disease, but found those impairments to be non-severe because no evidence indicated that they imposed any functional limitations. R. at 21. As the ALJ noted, consultative examiner Dr. Edwin Sperr, a clinical psychologist, diagnosed Claimant with ODD, opining that Claimant was an "oppositional little boy . . . who relates to [his mother] and his father in an oppositional manner." R. at 23, 216. However, Dr. Sperr did not indicate that ODD limited Claimant's functional ability in any way. R. at 213-216. Significantly, Claimant's educational records do not reflect disciplinary problems or behavioral problems attributed to any of the nonsevere impairments. R. at 21, 212.

6

Although Claimant scored a sixty-six in third grade conduct, his grades are mostly inconclusive. Id. In third grade, Claimant scored five A's, one D, and four F's, including a ninety-four in Spanish, a ninety-six in visual arts, and a thirty-five in mathematics. These scores provide no indication that ODD, childhood onset-type, allergic rhinitis, or gastroesophageal reflux disease had any impact on his performance in the classroom. See R. at 212.

Although Plaintiff attempts to minimize Claimant's academic progress by claiming "the grades are in IAP courses," the record affirmatively demonstrates the Individualized Accommodation Plan ("IAP") was utilized to support his progress in normal classroom settings rather than replace it. (Pl.'s Br. at 5; see R. at 6-11.) Claimant's IAP accommodations are mostly for an extended time period to complete assignments and tests. Id. In addition, Dr. Adrian Janit, a consultative psychological examiner, evaluated Claimant's ability to maintain attention and concentration. R. at 366. Dr. Janit opined that Claimant was not limited in attention and concentration, and seemed to be able to focus throughout the evaluation without many breaks. R. at 366. For all of these reasons, substantial evidence supports the ALJ's determination that Claimant's ODD, childhood-onset type, allergic rhinitis, and gastroesophageal reflux disease had no more than minimal effect on his functional ability.

In any event, by finding that Claimant had severe impairments, the ALJ found in Plaintiff's favor at step two and proceeded with the third step of the sequential evaluation process. Thus, "[e]ven if the ALJ erred in not indicating whether [a

condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that he has considered all of the claimant's impairments, whether severe or not, in combination." Id. at 825. Here, it is clear that the ALJ considered all of Claimant's impairments in combination, severe and not severe, when determining whether Claimant meets a listing or functionally equals the severity of a listing as discussed below. R. at 21.

**C. The ALJ Properly Found Plaintiff's Subjective Complaints Less than Fully Credible.**

Under the Eleventh Circuit's three-part standard for evaluating a claimant's subjective complaints, a plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); see also Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); see also Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 832 (11th Cir. 2013).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). For an individual under age eighteen claiming disability benefits under Title XVI who is unable to adequately describe his or her symptom(s), the adjudicator will accept the description given by the person most familiar with the individual, such as a parent, other relative, or guardian. 20 CFR 416.928(a); SSR 96-7P, 1996 WL 374186, n.2.

Plaintiff primarily takes issue with the ALJ's credibility determination as to her statements regarding the intensity, persistence, and functionally limiting effects of Claimant's alleged disabling symptoms. Pl.'s Br., p. 7. Plaintiff testified at the hearing that Claimant (1) has trouble focusing on tasks, (2) struggles with learning, speech, language and communication, and made F's in school, (3) struggles with personal hygiene and daily living, and (4) suffers from habitual sleepiness and dizziness due to asthma and a sleep disability. R. at 37-69. Plaintiff argues that Dr. Janit's evaluation of Claimant supports Plaintiff's testimony. Pl.'s Br., p. 8. However, as discussed below, the ALJ gave multiple reasons for

9

finding Plaintiff's testimony less than fully credible, and in so doing relied on substantial evidence.

In regards to Claimant's alleged inability to focus on tasks, the ALJ gave substantial weight to Dr. Janit's findings that Claimant's focus and attention were not limited. R. at 24, 366. Dr. Janit opined that during his assessment, Claimant appeared motivated and worked hard on difficult questions and tasks. R. at 365. Dr. Janit was able to rule out ADHD, and indicated that no ADHD symptoms were observed. R. at 366. Additionally, Dr. Sperr opined that Claimant did not display any significant signs of hyperactivity. R. at 213.

In regards to Plaintiff's testimony that Claimant struggles with learning, speech, language and communication, and made F's in school, the ALJ cited Dr. Janit's opinion that Claimant's language abilities and speech were "normal . . . [or] within normal limits . . . ." R. at 364. Dr. Janit found that Claimant's "articulation was fair . . . his speech seemed logical, coherent, and goal-directed . . . [and his] utterances did not suggest delusions or thinking impairments." Id. Furthermore, as the record reveals, Claimant's grades contradict Plaintiff's claims that he made mostly F's in school. R. at 212. Claimant's third grade report card includes five A's, one D, and four F's. R. at 365.

While Plaintiff avers that Claimant struggles with personal hygiene and daily living, the ALJ pointed to statements in Dr. Sperr's evaluation which directly refute this allegation. R. at 216. Dr. Sperr noted that Claimant was "neatly groomed and dressed." R. at 214. During the evaluation, Claimant told Dr. Sperr that he was able to "put on and take off shirts, shoes, pants and shirts . . . button his clothes and tie his shoes . . . wash and dry his hands and

. . . take a bath by himself." Id. Claimant's own statements indicate that he does not suffer from the functional limitations Plaintiff alleges. See id. Claimant also demonstrates normal social functioning. Dr. Janit noted that Claimant has many hobbies including playing cards, basketball, football, and has eighteen friends with whom he is in regular contact. R. at 363. The record evidence suggests that Claimant exhibits normal functioning for his age. See id.

Although Claimant has a documented history of asthma and a sleep disability, the relevant medical records do not indicate that Claimant's condition is as limiting as Plaintiff alleges. R. at 213-216, 223-224, 231, 238. Although Claimant has experienced multiple asthma attacks, medical tests show no abnormalities with any critical organs, including the heart and lungs. R. at 238, 231. As discussed by the ALJ, Claimant's active lifestyle provides further evidence that Claimant's asthma and sleep disability are not as limiting as Plaintiff alleges. R. at 22-24, 28-29. Claimant plays basketball, football, and is otherwise physically active. R. at 23. Claimant received a perfect score of 100 in third grade physical education, which further shows Claimant's asthma and sleep disability are not disabling. R. at 212. Consequently, substantial evidence supports the ALJ's determination that Plaintiff's statements of Claimant's disabling symptoms are less than credible.

In sum, the ALJ gave numerous explicit reasons for not fully crediting Plaintiff's testimony as to Claimant's symptoms. The reasons given by the ALJ are more than adequate and based on substantial evidence. See Foote, 67 F. 3d at 1561-62.

**D.   The ALJ's Decision that Claimant Did Not Meet Listing 112.11 Is Supported by Substantial Evidence.**

Plaintiff argues that Claimant's impairments or combination of impairments "meets or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)." However, Plaintiff does not specify which impairment within the Listing Claimant allegedly meets. Pl.'s Br., pp. 8-10. Instead, Plaintiff argues the ALJ ignored all of the school educational documents, Plaintiff's testimony, and the medical records that support a finding of marked inattention, marked impulsiveness, and marked hyperactivity. Id. Assuming *arguendo* Plaintiff is asserting that Claimant meets Listing 112.11 for ADHD, the ALJ relied on substantial evidence in determining that Claimant does not meet Listing 112.11. Indeed, the record directly contradicts this naked assertion.

The claimant bears the burden of presenting specific medical findings to show he meets a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, a claimant needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severe, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to meet the requirements of Listing 112.11, a child between the ages of three and eighteen must show (1) medically documented findings of marked inattention, impulsiveness and hyperactivity, and (2) a marked impairment in two of the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.11.

Plaintiff has failed to cite or to provide any medically documented findings showing marked inattention, marked impulsiveness, or marked hyperactivity. See 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.11A. On the contrary, as the ALJ explained, Dr. Janit found that (1) Claimant's ability to understand and carry out instructions is not limited because Claimant was able to comprehend and comply with all requests made of him during the evaluation; (2) Claimant's ability to maintain attention and concentration is not limited in that he was able to attend and focus throughout the evaluation without many breaks; (3) Claimant's ability to respond appropriately to teachers, peers, and the general public is only moderately limited in that he reported bullying his peers and getting along poorly with his teachers, and such inappropriate behavior suggests Claimant has a conduct disorder, childhood onset type; and (4) Claimant's ability to adhere to a school schedule and complete tasks in a timely fashion was moderately limited because he appeared to require redirection and reminders to focus on the task at hand. R at 24-25, 366-67. Significantly, Dr. Janit was able to "rule-out" ADHD, opining that Claimant's borderline intellectual functioning and conduct disorder were likely the cause of any inattention or impulsivity. R. at 366. Furthermore, as referenced by the ALJ, Dr. Sperr found that Claimant "did not display significant signs of hyperactivity." R. at 213. In sum, substantial evidence supports the ALJ's determination that Claimant does not meet Listing 112.11 for ADHD.

**E.    The ALJ Properly Weighed the Medical Evidence in the Record.**

Plaintiff also takes issue with the ALJ's decision to assign great weight to the state agency medical consultants, Spurgeon Cole, Ph.D., Milford Schwartz, M.D., Zeba

13

Najak, M.D., and James Piat, Ph.D. Pl.'s Br., p. 11. Plaintiff argues that Claimant's school records support finding Claimant has an impairment that functionally equals the severity of a listing. (See Pl.'s Br., pp. 11-12.)

Here, the state consultants' opinions are largely consistent with Dr. Janit's evaluation of Claimant. R. at 383-386, 375-378; see Edwards v. Sullivan, 937 F.2d 580, 585 (11th Cir. 1991) (finding the ALJ could rely on non-examining physician's report in denying disability insurance benefits where the report did not contradict information in examining physicians' reports); see also Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742 (11th Cir. 2011). Although an examining physician's report is normally entitled to more weight than that of a non-examining physician, no error results when the ALJ assigns greater weight to the non-examining physician's opinion when it does not conflict with that of the examining physician. Edwards, 937 F.2d at 585. Here, Dr. Janit's report was fully credited in both reports made by the state consultants. The ALJ did not err in assigning great weight to the reports by the state consultants, and was entitled to assign great weight to Dr. Janit's evaluation.

Although Plaintiff argues that the ALJ should have assigned substantial weight to Claimant's teachers, there are no reports by any of Claimant's teachers in the record. Pl.'s Br. p. 11. The ALJ was only presented with Claimant's third grade report card, and evidence of Claimant's IAP or "accommodation plan" was submitted to the Appeal's Council more than seven months after the ALJ's decision. R. at 6, 212. Neither calls into question the ALJ's determination, based on multiple expert reports, that Claimant does not

suffer from ADHD and is not markedly limited in his ability to focus and concentrate on tasks.

In sum, the ALJ did not err in assigning great weight to the state consultants' reports. The state consultants' opinions are entirely consistent with Dr. Janit's findings. Although Plaintiff argues that great weight should have been assigned to Claimant's teachers, the record is devoid of any functional assessments by Claimant's teachers.

**F.     The ALJ Properly Determined that Claimant Did Not Have a Combination of Impairments that Functionally Equals the Listings.**

Functional equivalence can be found by assessing a child's overall functional limitations that result from her severe impairment or combination of impairments. 20 C.F.R. § 416.926a. In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [one]self; and (6) health and physical well-being. Id. Functional equivalence requires a "marked" limitation in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a).

A marked limitation is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that "interferes very seriously" with a claimant's ability to initiate, sustain, or complete activities. Id. §§ 416.926a(e)(2)-(3). However, a rating of extreme is reserved for only the "worst

limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

The ALJ concluded that Claimant did not have a marked or extreme limitation in the domains of (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; and (5) caring for [one]self. R. at 26-31. The ALJ did find Claimant had a marked limitation in (6) health and physical well-being. R. at 31. Plaintiff argues the ALJ erroneously concluded that Claimant did not functionally equal the Listings because Claimant has marked limitations in the functional domains of (1) acquiring and using information and (2) attending and completing tasks. Pl's Br., pp. 12-13. Because Plaintiff does not address the other domains, the Court will only consider whether the ALJ erred in finding Claimant did not have a marked or an extreme limitation in the domains of acquiring and using information, and attending and completing tasks. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

As to the domain of acquiring and using information, the ALJ considered Plaintiff's testimony that Claimant had a learning disability preventing him from easily understanding and comprehending information. R. at 47-48. However, the ALJ found that Claimant had less than marked limitations in acquiring and using information based on the evaluations and opinions of Dr. Janit, Dr. Cole, and Dr. Najak. R. at 27. As the ALJ

noted, Dr. Janit never indicated the presence of a learning disability, and although he assessed Claimant's IQ score to be 63, he opined that Claimant was likely borderline intellectual functioning. R. at 366. A diagnosis of borderline intellectual functioning is mutually exclusive of intellectual disability. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 47-48, 741 (4th Ed. Text Rev. 2000) (explaining importance of diagnostically "[d]ifferentiating Mild Mental Retardation from Borderline Intellectual Functioning" based upon "careful consideration of all available information"). Furthermore, a diagnosis of borderline intellectual functioning alone does not establish functional limitations in the domain of acquiring and using information. See SSR 09-3p ("[T]his domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school."); Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 769 (11th Cir. 2012) (finding that claimant did not have marked limitation in domain of acquiring and using information, although claimant was diagnosed with borderline intellectual functioning); Davis v. Barnhart, 153 F.App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). The ALJ also cited Dr. Cole and Dr. Najak's evaluations, and both determined that Claimant had less than marked limitations in this domain. Drs. Cole and Najak both indicated that although Claimant received a full scale IQ score of 63 on Dr. Janit's assessment, subset scores were scattered. Significantly, Drs. Cole and Najak noted that Claimant scored a "7 on vocabulary and is in a regular classroom." R. at 375, 383. Consequently, by relying on Dr. Janit, Dr. Cole, and Dr.

Najak's evaluations, the ALJ relied on substantial evidence in determining that Claimant had a less than marked limitation in the domain of acquiring and using information. R. at 26-27, 375, 383, 366.

As to the domain of attending and completing tasks, the ALJ considered Plaintiff's testimony that Claimant had trouble with concentration and completing tasks, but found the record evidence did not support this allegation. R. at 27. Again, the ALJ relied heavily on Dr. Janit's evaluation, noting that Dr. Janit found that Claimant's concentration was within normal limits, and that his ability to carry out instructions was not limited in that he seemed able to comprehend and comply with all requests made of him during the evaluation. R. at 28, 366. The ALJ also cited Dr. Sperr's evaluation, emphasizing that Dr. Sperr did not find that Claimant displayed any signs of hyperactivity. R. at 27. The ALJ gave great weight to Dr. Cole and Dr. Najak's opinions, and both Dr. Cole and Dr. Najak opined that claimant had less than marked limitations in this domain. R. at 28, 375, 383.

Because a finding of functional equivalence requires a "marked" limitation in two domains, or an "extreme" limitation in one domain, the ALJ properly found that Claimant does not functionally equal the Listings. The ALJ relied on substantial evidence in concluding that Claimant did not have either an "extreme" limitation or a "marked" limitation in the domains of acquiring and using information, and attending and completing tasks. 20 C.F.R. § 416.926a; R. at 26-30.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 4th day of January, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA